NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0476n.06

No. 22-5389

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 14, 2023
KELLY L. STEPHENS, Clerk

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
|  | ) |
| v. | ) |
|  | ) |
| DECARDO MOORE, | ) |
| Defendant-Appellant. | ) |
|  | ) |
|  | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

OPINION

Before: SUTTON, Chief Judge; CLAY and LARSEN, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Decardo Moore appeals his sentence of life imprisonment after pleading guilty to one count of robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951, three counts of aiding and abetting robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2, one count of using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 1924(c), and three counts of aiding and abetting the use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 1924(c) and 18 U.S.C. § 2. Moore also appeals his conviction, arguing that his guilty plea lacked a factual basis because the government failed to prove venue. For the reasons set forth below, we **AFFIRM** Moore's conviction and sentence.

## I. BACKGROUND

### A. Factual Background

Moore's sentence of life imprisonment stems from his participation in four armed robberies. The first robbery took place on March 28, 2019 at an Exxon gas station located in

Memphis, Tennessee. Moore robbed the Exxon station at gunpoint. At that time, Kamir Versi was behind the cash register. After Versi handed Moore money, Moore fired his gun and then fled the gas station. The bullet from Moore's gun hit Versi in the chest, and Versi died at the scene of the incident.

The three remaining robberies took place on June 28, 2019 at three other business establishments located in Memphis, Tennessee: Mapco Express, Murphy Express, and a second Exxon location. Moore's role in these robberies varied. At Mapco Express, Moore and one other individual, both armed, robbed the business at gunpoint. At Murphy Express and the second Exxon station, two other individuals robbed the businesses at gunpoint, while Moore acted as a getaway driver.

In connection with the four robberies, a grand jury returned an eight-count indictment against Moore. Count 1 charged Moore with robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951. Counts 3, 5, and 7 charged Moore with aiding and abetting robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2. Count 2 charged Moore with using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Lastly, Counts 4, 6, and 8 charged Moore with aiding and abetting the using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. Moore pleaded guilty to all counts.

**B. Moore's Sentencing**

Prior to sentencing, the presentence report (PSR) determined that Moore's Guidelines range was life imprisonment, based on a total offense level of 43 and a criminal history category of VI. The total offense level was based on a cross-reference to first-degree murder, USSG § 2A1.1, which was referenced in the guideline applicable to Moore's robbery charge (Count 1).

Although Moore's Guidelines range was life, some of Moore's counts (Counts 1, 3, 5, and 7) carried statutory maxima. Thus, the PSR recommended a sentence of 1,332 months' imprisonment, followed by three years of supervised release.

The district court sentenced Moore to a total sentence of life imprisonment, specifically sentencing Moore to life on Count 2. At sentencing, the district court asked the probation officer who had prepared the PSR whether a 1,332 month sentence (111 years) differed in practice from life imprisonment. The probation officer responded that life imprisonment was a Guidelines sentence and that, even with good conduct time, Moore would have to serve at least 94 years of a term-of-years sentence. After this exchange, the district court sentenced Moore to consecutive sentences of life imprisonment on Count 2; 240 months per count on Counts 1, 3, 5, and 7; and 84 months per count on Counts 4, 6, and 8. The district court also ran most of these sentences consecutively to pending state criminal charges.

## II. DISCUSSION

On appeal, Moore argues that his sentence is procedurally and substantively unreasonable. He also argues that the government failed to prove that venue lay in the Western District of Tennessee, rendering his guilty plea invalid.

### A. Moore's Sentence

#### i. Procedural Reasonableness

This Court reviews a defendant's sentence for substantive and procedural reasonableness. *United States v. Gates*, 48 F.4th 463, 468–69 (6th Cir. 2022). A challenge to the procedural reasonableness of a sentence is reviewed for plain error if the "sentencing judge asks" for objections and "the relevant party does not object." *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). Because the district court asked Moore for objections, and Moore did

not object to the procedural reasonableness of his sentence, the procedural reasonableness of his sentence is reviewed for plain error. Plain error occurs if the district court committed an "(1) error (2) that was obvious or clear, (3) that affected [the] defendant's substantial rights[,] and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).

Moore raises several challenges to the procedural reasonableness of his sentence. He argues that his sentence is procedurally unreasonable because the district court calculated his Guidelines range incorrectly, failed to explain how his mental health bore on sentencing, and failed to explain why it ran his sentences consecutively. We address each argument in turn.

*1. Calculation of Guidelines Range*

A sentence is procedurally unreasonable when, for instance, the district court calculates the defendant's Guidelines range incorrectly. *Gates*, 48 F.4th at 469. Moore argues that the district court's Guidelines calculation was erroneous because the court applied a cross-reference to first-degree murder that he contends is inapplicable.

Moore's applicable guideline, USSG § 2B3.1, ordinarily establishes a base offense level of 20 for a robbery conviction. USSG § 2B3.1(a). However, USSG § 2B3.1(c) directs the district court to cross-reference USSG § 2A1.1, which carries a base offense level of 43 "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111." 18 U.S.C. § 1111(a) defines murder as "the unlawful killing of a human being with malice aforethought" and specifies that "[e]very murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery . . . is murder in the first degree." Malice aforethought may be inferred when a defendant "grossly deviates from the standard of care" such that "he must have been aware of a

serious risk of death or serious bodily injury." *United States v. Conatser*, 514 F.3d 508, 523 (6th Cir. 2008) (quoting *United States v. Sheffey*, 57 F.3d 1419, 1430 (6th Cir. 1995)).

In this case, the district court applied the cross-reference to first-degree murder because it determined that Moore intended to shoot or kill Versi. It was not clear error for the district court to discredit Moore's testimony to the contrary. *See United States v. Wright*, 747 F.3d 399, 413 (6th Cir. 2014) (noting that factual determinations during sentencing are reviewed for clear error). The record in this case does not produce "the definite and firm conviction that a mistake has been committed," as required for clear error. *United States v. Tocco*, 306 F.3d 279, 284 (6th Cir. 2002) (citation omitted). A surveillance video captured the robbery, and it shows Moore pointing the gun at Versi and shooting at close range before fleeing the store. These facts adequately support a conclusion that Moore was aware of a risk of death or serious bodily injury to Versi. Furthermore, the district court concluded that regardless of intent, Moore's conduct constituted murder under § 1111 because he caused a death during a robbery and therefore committed felony murder. That conclusion is consistent with our case law. *See United States v. Poindexter*, 44 F.3d 406, 409–10 (6th Cir. 1995) (applying USSG § 2A1.1 to felony murder). In light of this record, the district court did not plainly err by applying the cross-reference to first-degree murder to calculate Moore's Guidelines range. Furthermore, because the district court adequately concluded that Moore intended to shoot or kill Versi, we reject Moore's related argument that the district court should have departed downward because the killing was not knowing or intentional. *See* USSG § 2A1.1 n.2(B).

We briefly discuss another aspect of the district court's Guidelines calculation. The record suggests that prior to sentencing Moore to life imprisonment on Count 2, the probation officer and court treated the first-degree murder cross-reference as applicable to Count 2, whereas it applies

to Count 1.  Ultimately, in this case, such an error would not be plain because it does not affect Moore's substantial rights:  Moore's Guidelines range was life imprisonment, and Count 2 carries a maximum sentence of life.  Moreover, the PSR's recommended sentence of 1,332 months (111 years) would have had the effect of a life sentence for Moore because, even with good conduct time, he would have had to serve approximately 94 years of his term.  While such an error would not be plain under these circumstances, we caution sentencing courts to carefully identify the guidelines that apply to each count of a multi-count judgment.

2.  *Adequacy of Explanation*

Moore also argues that the district court inadequately explained how his mental health history bore on his sentence.  A sentence is procedurally unreasonable when the district court fails to explain the basis for it.  *United States v. Nichols*, 897 F.3d 729, 737 (6th Cir. 2018) (citation omitted).  While failure to respond to one of the defendant's arguments is not necessarily procedurally unreasonable, *see, e.g.*, *United States v. Duane*, 533 F.3d 441, 453 (6th Cir. 2008), a district court is more likely to have erred when it is not evident whether it "even understood [the] Defendant's argument," *see Wallace*, 597 F.3d at 806.  Ultimately, "the record must 'make[] clear that the sentencing judge considered the evidence and arguments.'"  *Id.* at 805 (alteration in original) (quoting *Vonner*, 516 F.3d at 387).

We conclude that the district court's consideration of Moore's mental health satisfies these requirements.  The district court noted that it had "taken into account" Moore's "mental and emotional diagnoses" and recommended that the Bureau of Prisons offer "mental health counseling and treatment," including cognitive behavioral therapy.  Tr. Sentencing Hr'g, R. 223, Page ID #916–17.  While the district court could have explained in more detail how Moore's mental health bore on his sentence, the record demonstrates that the district court considered

Moore's mental health and understood it might bear on sentencing, as required by our case law. *See United States v. Allen*, 665 F. App'x 531, 536–37 (6th Cir. 2016) (upholding procedural reasonableness of a sentence where the district court acknowledged defendant's specific mental health concerns and recommended treatment).

Moore also argues that the district court failed to explain why it ran his sentences consecutively. A district court's decision to impose a consecutive or concurrent sentence may be "intertwined" with its balancing of the § 3553(a) factors. *United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011). Additionally, when a district court is required to run sentences consecutively, this Court has sometimes relaxed the requirement for explanation. *See United States v. Duncan*, No. 22-5370, 2023 WL 5447338, at *3–4 (6th Cir. Aug. 24, 2023) (holding that sentences were procedurally reasonable where USSG § 5G1.2(d) required consecutive sentencing).

In this case, the district court was required to run the sentences on Counts 2, 4, 6, and 8 consecutively by 18 U.S.C. § 924(c)(1)(D)(ii), which prohibits a "term of imprisonment imposed on a person under this subsection [to] run concurrently with any other term of imprisonment." The district court was also required by USSG § 5G1.2(d) to stack Moore's sentences on Counts 1, 3, 5, and 7 separately "to produce a combined sentence equal to the total punishment." *See United States v. Graham*, 327 F.3d 460, 465 (6th Cir. 2003) (quoting USSG § 5G1.2(d)); *id.* ("[I]n cases in which the sentence on the count with the highest statutory maximum is less than the total punishment, courts must stack the sentences that do not carry mandatory consecutive sentences . . . .").

In any case, even if the district court could have run some of Moore's sentences concurrently, it did not plainly err because Moore's substantial rights were not affected. *See Wallace*, 597 F.3d at 802. The district court's decision to specify term-of-years sentences for

certain counts was required because Counts 1, 3, 5, and 7 have statutory maxima; however, running these sentences consecutively ultimately does not alter Moore's total sentence of life imprisonment, which was based on his life sentence on Count 2.

The authorities Moore cites do not yield a different result. One case, *United States v. Nikolovski*, involved an above-Guidelines sentence. 565 F. App'x 397, 403 (6th Cir. 2014) (per curiam). However, this Circuit has required less explanation for within-Guidelines sentences such as Moore's sentence. *See United States v. Steeby*, 350 F. App'x 50, 53 (6th Cir. 2009) (citing *Rita v. United States*, 551 U.S. 338, 358–59 (2007)). As to *United States v. Cannon*, that case involved an unusual situation in which the district court both imposed an "above-guideline-range total punishment" for a reduced sentence and indicated that the reduced sentence was within the Guidelines range. 692 F. App'x 228, 233–34 (6th Cir. 2017). Because the district court did not explain this "puzzle," *id.* at 231, this Circuit reversed, *id.* at 234. Accounting for the fact that Moore's within-Guidelines sentence differs from these cases, the district court did not plainly err by running Moore's sentences consecutively.

## ii. Substantive Reasonableness

Because Moore's sentence is procedurally reasonable, this Court must now consider the substantive reasonableness of his sentence. This Court reviews the substantive reasonableness of a sentence for abuse of discretion. *See Vonner*, 516 F.3d at 392. "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005) (citation omitted).

Although "[a] life sentence is an extraordinary punishment," this Circuit evaluates the substantive reasonableness of such a sentence as it would other terms of imprisonment. *See United*

*States v. Messer*, 71 F.4th 452, 463 (6th Cir. 2023). A sentence must be "sufficient but not greater than necessary . . . to comply with the purposes of § 3553(a)." *Gates*, 48 F.4th at 476–77 (citation omitted). A claim that a sentence is substantively unreasonable is a claim that "the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018); *see also United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). When a sentence falls within the Guidelines range, it receives a rebuttable presumption of reasonableness. *United States v. Callahan*, 801 F.3d 606, 626 (6th Cir. 2015). Applying these standards, this Circuit has previously determined that a district court did not abuse its discretion in upholding a life sentence where the life sentence fell within an individual's Guidelines range, and the district court duly considered the § 3553(a) factors. *See, e.g.*, *Messer*, 71 F.4th at 463; *United States v. Abdulmutallab*, 739 F.3d 891, 908 (6th Cir. 2014); *United States v. Sherrill*, 972 F.3d 752, 774 (6th Cir. 2020).

Because Moore's sentence is within his Guidelines range, we presume his sentence is reasonable. To rebut this presumption, Moore argues that his sentence is substantively unreasonable in light of his mental health history, his acceptance of responsibility and cooperation during the investigation, and the fact that he did not intend to shoot or kill Versi. Although a district court's sentence should account for a defendant's mental illness, "the court is not required to grant a defendant's motion for a downward variance whenever a defendant suffers from such an illness." *United States v. Owen*, 940 F.3d 308, 317 (6th Cir. 2019). Thus, this Circuit has previously affirmed a sentence despite a defendant's mental health history where the defendant's criminal conduct was "very serious," the district court determined the need for public protection was high, and the sentence was within the Guidelines range. *Id.* at 317–18; *see also United States*

*v. Loos*, 66 F.4th 620, 625 (6th Cir. 2023); *United States v. Tolbert*, 459 F. App'x 541, 548–49 (6th Cir. 2012).

In this case, the district court did not abuse its discretion. At sentencing, the district court acknowledged Moore's mental health history; however, it determined that a life sentence was appropriate given the balance of the § 3553(a) factors. The district court first considered the nature and circumstances of Moore's offense, emphasizing the "serious" and "violent" nature of Moore's crimes and the "callous nature" of the shot that killed Versi. Tr. Sentencing Hr'g, R. 223, Page ID #909. It then considered Moore's personal history and characteristics, discussing Moore's history of escalating criminal behavior, which it determined prior sentences had not deterred. It also considered the available sentences, discussing both the term-of-years sentence recommended in the PSR and a life sentence. Finally, it considered the mental health services that the Bureau of Prisons might provide for Moore.

In balancing the § 3553(a) factors, the district court also considered Moore's argument that he did not intend to shoot Versi. However, as discussed *supra* Section II.A.i, the district court did not err when it discredited Moore's testimony on this matter. The district court also heard arguments about Moore's willingness to take responsibility and cooperate with the judicial process; however, it concluded that the seriousness of Moore's offenses, Moore's personal history, and the need for deterrence justified Moore's life sentence. Given this record, the district court did not abuse its discretion by sentencing Moore to life imprisonment.

## B. Venue

As to venue, Moore argues that his guilty plea is invalid because his plea colloquy does not establish that venue lay in the Western District of Tennessee. However, a district court may accept a guilty plea like Moore's in the absence of a factual basis for venue. *See United States v. Mobley*,

618 F.3d 539, 546 (6th Cir. 2010) (concluding that "consideration of venue cannot be part of the required 11(b)(3) factual basis determination"). That guilty plea, in turn, waives Moore's ability to raise non-jurisdictional issues, *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001), including venue, *see Mobley*, 618 F.3d at 546 & nn.3–4.

This Circuit has identified an exception to the rule that a guilty plea waives a venue challenge, which applies when a defect to venue "is not apparent on the face of the indictment." *See Mobley*, 618 F.3d at 546 n.4 (also requiring that "the defendant does not have notice of the defect through other means" (internal quotation marks and citation omitted)). However, this exception is inapplicable here. To the contrary, Moore's indictment makes clear that there was no defect in venue: For example, it provides a Memphis, Tennessee, address for the location of each robbery. Moore's guilty plea was valid, and because Moore pleaded guilty, he waived his venue challenge.

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** Moore's conviction and his sentence.